Step up and identify yourselves. My name is Allison Shaw. I represent Cornell Brisco. Assistant State Secretary John Walters for the people of State of Illinois. You said John Walters? Yes. So you basically know we give the 15-15 and whatever if there are a lot of questions. But as you saw in the last one, there wasn't a lot of questions. So proceed. May it please the Court, today I would like to focus on Issue 2, that Brisco was denied his right to an impartial judge, and Issue 4, that Brisco was denied his right to counsel of choice. But I will be happy to speak on any of the other issues as well. At a pretrial hearing, the judge actively prompted the prosecution to amend the charging instrument in order to cure what it termed a deficiency and charge Brisco with a Class X offense. These actions, especially in light of the prosecutor's statement, Judge, I don't have this as a Class X, went beyond those of a neutral arbiter. Rather than simply clarifying, the judge was actually instructing the prosecution as to how to amend the charging instrument and elevate an offense the prosecutor had already charged. Wasn't the judge merely responding to a question for clarification of the defendant? He articulated his understanding of the charging instruments, and wasn't he also referring to discussions had during a 402 conference? And at all times, really just providing clarification to the defendant in pursuit of his inquiry? Initially, the judge was responding to defense counsel's request. However, the prosecutor interrupted the judge, saying, Judge, I don't have this as a Class X. At that point, after the prosecutor had said that, the judge referred to the charging instrument, saw that they had used a different offense to enhance the charge, and then instructed the prosecutor as to how they could cure what it termed and its words as a deficiency in the charging instrument. But didn't this misunderstanding stem from the 402 conference? I mean, that's how I, what I infer from reading the material here, is that the judge was of a mind, of this mind, based on what was said during the 402 conference, and then upon closer scrutiny of the charging instrument by the prosecutor, they realized that one of the predicate offenses was not what would make this X-able. Isn't that right? Well, it's not clear what happened in the 402 conference, or what gave Briscoe the idea that he was facing a Class X offense. That conference is not on the record. There's no indication that the state said in that 402 conference, we're charging you with a Class X. In fact, what the record shows is that the state was operating under the understanding that they had charged Briscoe with a Class II offense, not a Class X offense. Well, but that's not necessarily true, because we don't know, again, like you indicated, what was said during the course of the 402 conference. Certainly the court walked out of that conference thinking it was a Class X, and so no one disabused him of that belief during the course of that conference, and it was only during this additional colloquy in court in response to the defendant's inquiry that the prosecutor advanced this notion that this isn't how it's charged. But then didn't the prosecutor later review the preliminary hearing transcript and confirm that this was really just a typographical error, that the charging instrument does not comport with the testimony advanced during the course of the preliminary hearing, so they sought to amend it so that it would be in compliance with what was advanced at that hearing. Isn't that it? That's correct. However, the issue here is not whether the prosecution would have – the issue here is that the prosecutor and the charging instrument were proceeding with the Class II offense. The prosecutor would not have amended the charging instrument to indicate a Class X – to properly charge a Class X offense without the court's intervention. Without the court's clarification, really, right? They were under misapprehension, as evidenced by their motion to amend when they say, we reviewed the preliminary hearing transcript and find that this charging instrument in its current form does not comport with that. There's a typographical error. That's some of the language used, right? Well, it was the – the prosecution did this after the court had spoke – had referred to the indictment as a deficient charging instrument, using the words deficiency and telling the – implying that the prosecution needed to cure this deficiency. But he had directed it not to the State. He directed it mainly to the defendant, and he reminded them two or three times, did he not, that they could amend this if you don't take the seven-year term. He did. And I would argue that that – that the judge's statements in these contexts referring to the charging instrument as a – as a deficient charging instrument and telling Briscoe that he – if he didn't accept the plea, that he could then be facing a higher charge, that that resulted in an atmosphere of coercion – of – that was coercive. But that doesn't reflect reality. I mean, that – what he said, cure the deficiency, is simply – what he's referring to, it seems to me, in context, is the charging instrument is deficient as it relates to what was referred to in the 402 conference when the court said – when the prosecutor said, judge, I don't have this as an X, the court's immediate response was, that's what was indicated in the conference. So in the conference, it's clear the judge was of the mind or told that this was a class X, and that's how they conferenced the case in that context, right? Just prior to the state saying, judge, I don't have this as a class X, the judge – the court says – is listing the different priors that Briscoe has and says, this is charged as a class II felony, looking at the charging instrument and seeing that it's charged as a class II felony. So at the very least, we don't know where Briscoe or anyone thought that they had the understanding of the class X felony. Briscoe's attorney asked, my client doesn't understand why he's class X, but he could have gotten that idea from – from defense counsel saying – from another – from another source. It doesn't change the class. It doesn't change the class of the offense. It changes the sentencing program. Well, the class of the offense, as it was charged in the – in the indictment, was a class II offense, which under the enhancement would only be a 3 to 14-year range. With a class X, Briscoe was then – was then liable for a 3 to – or a 6 to 30-year range. That's what I'm saying. It doesn't change the class of the offense, simply the sentencing program. And that's why I think you have to overcome that the judge in reality is being sympathetic to the defendant by saying, hey, wake up. You've got – if you let this go down the path, they're going to amend. I would argue that – But you've argued your spot. You don't have to – we're beating the dead horse maybe. I mean, I just want to stress that it's – it's the prosecutor's – it's within the prosecutor's discretion how to charge an offense. This amendment was not – or this indictment was not deficient in any way. But when the judge used the terminology, cure the deficiency, the prosecutor then could have – was responding to this and saying, well, we need to use this other prior to enhance the offense so that it's class X. You say it wasn't deficient in any way, but indeed it was deficient to the extent that it didn't comport with the preliminary hearing testimony, right? It – the state – the issue here is – Take your time. Sorry. The state is allowed – is given the discretion to charge it as they wish. If the state chose that they were going to charge this as a class II offense and proceeded that way, and the judge then saw that it was a class II offense, following that, the prosecutor noting, judge, we don't – we don't have – I don't have this as a class X offense. That shows that the prosecutor was not intending to charge it as a class X offense but as a class II offense. Okay. In addition to acting as a prosecutor, the court also denied Briscoe his right to counsel of choice as raised in Issue 4. On the first court date after trial, Attorney Irving Fetterman appeared in court having recently been hired by Briscoe's family to represent him on post-trial proceedings. However, the court – the judge gave him an impossible time frame of two weeks to investigate, obtain and review transcripts, and supplement the new – the motion – the post-trial motions. The court himself recognized the impossibility of this time frame, stating that, especially the need for a transcript on his part, that's not going to be possible. As a result, Fetterman withdrew his appearance, and the original public defender then filed a boilerplate motion for new trial the same day in which she did not even raise her earlier objection to the amendment of the indictment. It's important to note that this is not a situation where an attorney was not present or that Briscoe was simply asking for time to locate and hire an attorney because of his dissatisfaction, but rather that his family had followed through on his dissatisfaction and taken the expense and time to locate and hire a new attorney to represent him for post-trial proceedings. So, realistically, this judge should have just continued the case past his tenure and allowed another judge to pick up on the sentencing? Correct. That's your position? Yes. That's not an unusual situation. Judges retire all the time. It's not unusual for a judge to leave the bench. It's not unusual for another judge to take over the caseload for a retiring judge. Significantly, this was not a delay tactic or like in Childress, it was not a geyser, an impediment to thwart the administration of justice, but rather this was Briscoe's family following through on his earlier expressed complaints about his attorney hiring that attorney, that attorney in court ready, willing, and able to represent Briscoe on his post-trial motions. Had the defendant sought any other delays during the course of these proceedings? No. Had he sought substitution at any other time of his counsel's record? No. If there are no further questions, I would reserve the remainder of my time for rebuttal. Thank you. Thanks. May it please the Court. Again, I'm John Walters representing the people of the State of Illinois. With respect to the second issue, initially I would say that the, I would submit that the issue is forfeited. This whole error, alleged error, is a result of the court's response to the defendant's question in this case. Defendant interjected the issue. Defendant wanted clarification. Defendant wanted clarification on why the court had determined that this was a Class X eligible case. And the court explained, answered the defendant's question. I would submit to you in a large, large scale, thinking about this broadly, that as a matter of public policy, when we're dealing with the context of 402 admonitions, what we want is exactly what happened in this case. We want the trial judge to fully explain to the defendant everything that's on the table, whether it's in, whether it's spelled out in the charging instrument or not, so that the defendant is fully aware of his rights, so he can make a knowing and intelligent waiver of his rights. I would submit to you that that is exactly the reason that 402, Rule 402, was promulgated in the very first place, is that it is set up to effectuate United States Supreme Court policy, Illinois State Supreme Court policy, that defendants be fully admonished, that they be fully aware of the consequences of either pleading or not pleading guilty in a case. And I'd submit that the trial court, in addition to this issue being forfeited and there being no plain error because it's a defendant who interjected this issue, more than that, there cannot possibly be error in a trial court fully admonishing the defendant in the case. With respect to the fourth issue, unless there's any further questions on that, with respect to the fourth issue, I submit to you that the defendant, especially in the opening brief, started out from a false premise. And that was that a defendant has an absolute right to counsel of choice. The leading case on this issue was announced by the United States Supreme Court in the year 2006, and that is United States v. Gonzalez-Lopez. And in that case, the Supreme Court was very careful to say that this was not an absolute right, that this right to counsel of choice was carefully circumscribed in several important respects. In several important respects. And one of those, namely, that they spelled out was the demands of the court's calendar. Now that was echoed by our own Illinois Supreme Court in the year 2009 in the case of People v. Burnett. The Illinois Supreme Court echoed the United States Supreme Court and said that one of the factors that has to be looked at is the demands of the court's calendar. And both courts recognized that a trial court has discretion to weigh the needs of its calendar against the right to counsel of choice. But this court, in this case, this court's calendar was coming to a close. It was. And that's a factor that the court had to consider, because what's especially compelling in this case is that this was a bench trial, that the trier here wasn't just the presiding judge over the trial. He was the finder of fact. He was the one that heard the witnesses. He made credibility determinations. He was going to be asked in a post-trial motion to rule on his rulings. Who better in that position than the actual finder of fact to make these rulings? But you really have to balance the interests here, don't you? You absolutely have to balance the interests. Great concern is the defendant's right to counsel of his choice. And this would be, in my mind, no different than if a judge had an untimely demise. He dropped dead. Another judge would necessarily have to come in, review the transcript, and proceed, right? Well, there are a couple. Does the judge's interest in presiding over the remaining portion of this case, post-trial motions and sentencing, does that interest trump the interest of a defendant to have counsel of his choice represent him at that critical stage of the proceedings? It really is a case-by-case inquiry. It's a matter of trial court's discretion, and that's why this is an issue that's reviewed for abuse of discretion. The defendant has a burden here of showing that the trial court abused its discretion in weighing these competing interests. And as I say, what's especially compelling here is not only that the trial court was going to become unavailable in four weeks with its retirement, but the trial court was still going to be sitting up to and including those four weeks, but also there's another factor here, and that defense counsel was not going to be fully available during those four weeks. The case couldn't be continued for, say, three weeks, because defense counsel in three weeks was needed to have surgery. But notwithstanding that, didn't the trial court acknowledge that it was going to take every bit of those four weeks to get the trial transcript? And there was an issue of doing some additional investigation. There seemed to be some concern that the transcript certainly wasn't going to be available in two weeks, so whether it would be available in three weeks or four weeks, my recollection of the record is not clear as to whether it would have been ready in, say, three or four as opposed to two. Clearly the court recognized that two weeks was going to be too short a time frame to get the transcript in that case. But the fact of the matter is that these are all considerations that the trial court had to take into account, had to weigh the things that you're bringing up, but also had to weigh the fact that this court was the finder of fact in this case, not just the presiding judge, but the finder of fact, and that defense counsel was not going to be available.  I would point out that defense counsel himself didn't protest in this case. Defense counsel withdrew his appearance. He recognized that this was not going to be a workable, feasible situation for him to step up on this case. He took a position, it was rejected, and he retreated. That's what happened here, really. But arguably he could have said, I withdraw under objection. Your Honor, I just want you to know that while I feel forced to withdraw my objection, I do feel that defense counsel's choice here is not being respected. But again, ultimately this is a question of weighing all these factors that went in, and what I'm submitting to you is that the flaw in the defendant's argument is that the defendant didn't recognize that this is a balancing of interests, that the demands of the court's calendar are certainly a factor that has to be considered, and that in this particular situation, under these particular facts, the trial court didn't abuse its discretion. Now, I would submit to you, defendant suggests, what about a Crankle hearing, which is sort of like what you mentioned, where maybe the result has to be different. In Crankle, there's an inquiry, and at the end of that inquiry, if there's some determination that there's ineffective assistance of counsel, that there's at least an arguable claim of ineffective assistance of counsel, then new counsel has to be appointed. But why? Because embedded in the Sixth Amendment isn't just a right to counsel of choice. There's also the right to effective assistance of counsel, and the right to conflict-free counsel. And what Crankle attempts to address is a situation where there's a conflict of interest, because a defense attorney is having to stand there and argue that he was ineffective. So Crankle seeks to prevent that conflict of interest situation from happening. That's a completely different situation than what we had here. This is not a Crankle situation. So those interests that go into weighing the competing interests here, they're not a factor in weighing in this particular case. The Crankle determination, I would agree, if this is a Crankle situation, then those interests outweigh the needs of the court's calendar. So I would agree in that context. If this were a Crankle context, then that would be a different situation. But I submit to you that under the particular facts of this case, the trial court didn't abuse its discretion. Would you also agree that the defendant's interest in seeking substitution of counsel at this stage was made in good faith and without an effort to be dilatory? I don't believe that there was any showing that the defendant delayed in this case. I think the, in particular, I think this was happening about 30 days or so after judgment had been entered on the finding of guilty. But that's not the be-all and end-all. I would point out that. It's a factor. It's a factor. But I would point out, for instance, in the Huey case that I cited, there was no indication there that the defendant had delayed the case. It was simply a situation where defense counsel was not going to be available in a timely manner to litigate the case. And therefore, that chosen counsel, that counsel that was preferred by the defendant, was not allowed to be substituted in that case. The defendant had to choose a different counsel in that case. It's United States v. Huey. It's a Fifth Circuit case on counsel of choice. So the point is, these are all factors. These are all things that the trial court had to weigh. And my submission to you, Your Honors, is that the trial court did not abuse its discretion. The defendant has not made a case for showing that the trial court abused its discretion simply because the defendant didn't necessarily cause a delay in this case. There were other compelling, competing factors in this case that should be considered. It doesn't appear that the trial court gave greatest weight to his desire to tidy up his call before he retired. That was clearly a strong factor for the trial court. There's no question. But that's why I cited all the different examples in the law for the importance of and for the preference in our law for the judge who decided the case to rule on post-trial matters, to rule on a post-conviction petition, to rule on post-trial matters, to impose sentence. The law in all sorts of different ways sets out this preference that the judge who hears the case should be the one that That makes perfect sense, doesn't it? Absolutely. But not a requirement. And as you indicated at the onset, it's a case-by-case analysis. That's true. I would say that it's not a judge who just got transferred to another division and can readily come back for sentencing purposes. It's a judge who is no longer going to be a judge for whatever reason, whether it be his death or retirement or disability. But his death wasn't as if he had just died. There were four weeks that were going to continue on where he could still have heard the case, where he could still have continued the case for those four weeks. And, again, part of this case is that defense counsel was not also going to be available in that four weeks. But needed an unknown period to do further investigation and locate witnesses, and those representations were part of the record as well, right? Those are all part of the tapestry of this case, all things that had to be considered by the trial court. But, as I said, the one piece that I want you to focus on is with respect to the sentencing statute. The first part of that sentencing statute says that if the judge is sitting in that courtroom, if the judge is sitting on the bench, then the judge shall impose sentence. It's a mandatory. Now, it does go on. There's a dependent clause that's a conditional clause that says if the judge is no longer sitting, then the sentence should be imposed by a different judge. But the first part of that statutory clause is mandatory. And the judge was sitting in this case and was going to be continuing to sitting. In a case where he had said he had died, there was no possibility of continuing the case for four more weeks. In this case, there was at least the possibility of continuing the case for four more weeks. But, again, defense counsel wasn't going to be available within that timeframe. If there are no other questions, the people of the State of Illinois respectfully request that this court affirm defendant's conviction and sentence. Thanks. With respect to Issue 2, the State's statement that here the judge, the tenor of here that the judge was simply admonishing the briscoe about the potential sentence he could be facing,       It's not true. It's not true. It's not true. If you look to the tenor and the words that he was using in describing the indictment and describing that the indictment as a deficient indictment, that the State needed to cure this deficiency, and then using this to pressure briscoe to coerce him into rejecting the offer, heavily implying that if he didn't accept this offer, he was going to face a larger sentence. With regards to Issue 4, the key fact here is that it was not Faderman who caused this delay, but it was the actions of the judge and the judge's desire that caused this delay. The judge set the timeframe of two weeks, noting himself that it would be impossible for Faderman to be ready in two weeks. Faderman's surgery here is not at issue here. It's irrelevant to what happened here, because it was the judge trying to take care of his own schedule that led to this timeframe. It was the judge giving the timeframe, not Faderman saying, I can only, I will be unavailable after two weeks. Finally, with regards to the case law that the State cited, the Hughey case, and then stating that he has case law to, that this is something that's allowed, it's important that in the Hughey case, the court pointed out that counsel himself created the conflict. It was not the judge putting a restriction on counsel, but counsel saying, I will not be ready unless, because I'm representing another client in another trial. Regarding the other case law, those cases do not address situations where the judge was retiring and leaving the bench, and the defendant's right to counsel was implicated, as the situation is here. Therefore, if there are no further questions, I would ask that this court grant the relief requested. Thank you.